TRUMAN L. CRISPELL, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Transervice Corporation, a/k/a TTC, Inc., Appellant).

Fifth District (Illinois Workers' Compensation Commission Division)
No. 5—05—0575WC

Opinion filed December 1, 2006.

Andrew J. Kovacs and Scot C. Allen, both of Hahn, Enright & Hansen, of St. Louis, Missouri, for appellant.

Charles W. King, of Edwardsville, for appellee.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Truman Crispell (petitioner) filed an application for adjustment of claim against his employer, Transervice Corporation (respondent), seeking workers' compensation benefits for an amputation injury to his right leg. He also filed a third-party lawsuit against Heidtman Steel Products, the owner of the premises where the accident occurred. Petitioner recovered $984,750 in the third-party suit. His workers' compensation claim then proceeded to an arbitration hearing, where the issues centered on respondent's entitlement to lien credit against the third-party judgment for certain payments required under the Workers' Compensation Act (Act) (820 ILCS 305/1 et seq. (West 2002)). The payments pertained to replacing and servicing petitioner's prosthesis. The arbitrator held that respondent was entitled to the disputed credit.

Petitioner appealed to the Illinois Industrial Commission (Commission),[1] which affirmed the arbitrator's holding in a unanimous decision. Petitioner further appealed to the Madison County circuit court, which reversed the Commission's decision. Specifically, the court disagreed with the Commission's conclusion that respondent's lien covered expenses associated with maintenance, refitting, or replacement of petitioner's prosthesis. Respondent filed the instant appeal from the circuit court's order. We reverse that order and reinstate the Commission's decision.

## BACKGROUND

Petitioner's industrial accident occurred in July of 1991. As noted above, he obtained a judgment of $984,750 in his third-party suit. For workers' compensation purposes, the instant parties have stipulated that petitioner's accident caused 100% loss of use of his right leg. At the time of the arbitration hearing, respondent had made payments under the Act totaling $113,284.14 ($50,647.20 in medical bills, $56,988.88 in temporary total disability benefits, and $5,648.06 for 22 weeks of permanent partial disability benefits). Currently, respondent has made all disability payments to which petitioner is entitled under the Act. There is apparently no dispute that the aforementioned sums

---

[1]Now known as the Illinois Workers' Compensation Commission. See Pub. Act 93—721, eff. January 1, 2005.

are part of respondent's lien against the third-party recovery. Indeed petitioner has already paid respondent $80,727.07 in reimbursement.[2]

The instant dispute pertains to: (1) additional medical bills totaling $31,786.63 for necessary maintenance, repair, and replacement of petitioner's prosthesis prior to arbitration; and (2) similar prosthetic expenses in the future. Petitioner claims these expenses do not qualify as part of respondent's lien (and thus that respondent is not entitled to reimbursement or a credit for such expenses). Respondent, on the other hand, argues that its lien covers prosthetic expenses.

The arbitrator's decision stated: "The respondent is entitled to a credit and is relieved from its obligation to make payments on the aforementioned medical bills totaling $31,786.63 or on any medical bills in the future by reason of the third-party recovery by the petitioner until the applicable third-party settlement amount has been exhausted." The Commission affirmed this holding. In reversing the Commission's decision, the circuit court declared that prosthetic expenses invoke a statutory exception to the general rule of employer reimbursement from proceeds of third-party suits.

## ISSUE AND STANDARD OF REVIEW

The question before us is whether such an exception truly exists. The statutes at issue are sections 5(b) and 8(a) of the Act. Our review is *de novo. Sun Choi v. Industrial Comm'n*, 182 Ill. 2d 387 (1998).

## ANALYSIS

Section 5(b) contains the Act's lien and reimbursement provisions. In pertinent part, it reads:

> "Where the injury *** for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee *** and judgment is obtained and paid, *** then from the amount received by such employee *** there shall be paid to the employer *the amount of compensation paid or to be paid* by him to such employee *** *including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act.* ***

* * *

---

[2] At the time when reimbursement was made, respondent's lien totaled $107,636.09. The $80,727.07 payment represented 75% of the lien value. See 820 ILCS 305/5(b) (West 2002) (allocating 25% of respondent's lien as attorney fees for the third-party suit).

If the injured employee or his personal representative agrees to receive compensation from the employer or accept from the employer any payment on account of such compensation, or to institute proceedings to recover the same, the employer may have or claim a lien upon any award, judgment or fund out of which such employee might be compensated from such third party." (Emphasis added.) 820 ILCS 305/5(b) (West 2002).

These provisions show that the measure of an employer's lien is the amount of "compensation" due under the Act—specifically including payments required by section 8(a).

The first sentence of section 8 reads, "The amount of compensation which shall be paid to the employee for an accidental injury not resulting in death is ***." 820 ILCS 305/8 (West 2002). The section then outlines various types of payments, such as payments for: first aid; emergency medical treatment; certain medical, surgical, and hospital services; artificial members; braces; and maintenance, refitting, or replacement of artificial limbs. Then section 8(a) concludes with language central to the instant case:

"The furnishing by the employer of any such services or appliances is not an admission of liability on the part of the employer to pay compensation.

*The furnishing of any such services or appliances or the servicing thereof by the employer is not the payment of compensation.*" (Emphasis added.) 820 ILCS 305/8(a) (West 2002).

Petitioner claims that since the lien statute (section 5(b)) applies only to "compensation," this last sentence in section 8(a) excepts prosthetic-related expenses from respondent's lien. For the following reasons, we disagree.

The appellate court has repeatedly cited the last sentence of section 8(a) in a context signaling its applicability to medical services generally, not just to prosthetic services. See *Ahlers v. Sears, Roebuck & Co.*, 54 Ill. App. 3d 638 (1977), *aff'd*, 73 Ill. 2d 259 (1978) (nursing care services); *Herlihy Mid-Continent Co. v. Industrial Comm'n*, 252 Ill. App. 3d 211 (1993) (medical expenses, including expenses for chiropractic services); *Vulcan Materials Co. v. Industrial Comm'n*, 362 Ill. App. 3d 1147 (2005) (first aid and medical, surgical, and hospital services). This construction comports with the statutory language. Section 8(a) requires employers to provide more services than just those related to prostheses, and the last sentence of that section explicitly encompasses "any" such services. In this light, petitioner's interpretation would exclude all payments for section 8(a) services from an employer's lien on the basis that such payments are not compensation. Yet the opening language of section 8(a) clearly states

that such payments are compensation. Moreover, the lien statute specifically includes payments made under section 8(a), the very section where employers are required to make prosthetic-related payments. We agree with respondent's observation that "the sentence at issue was included in Section 8(a) for a reason other than that contemplated by" petitioner and the circuit court.

The reason becomes apparent upon considering the sentence in its historical perspective. The sentence was added to the Act by amendment in 1925. Shortly afterward, the Illinois Court of Claims explained the amendment's purpose:

"Prior to 1925, the furnishing of medical and hospital services was held to be a payment of compensation in the same manner and with the same effects as the payment of weekly or other compensation under Section 8. That presented a very unsatisfactory and unfair situation. The prompt furnishing of proper medical and hospital services was of great immediate importance both to the employee and to the employer, and yet the employer was placed in the position that if he provided such service and then it developed that there was no compensation liability, as for example that the condition was not due to accidental injury arising out of and in the course of employment, yet the furnishing of such service was a payment of compensation, and an admission of liability, *it affected the matter of limitations as to making claim under Section 24*, and was subject to review under Section 19(h) as being conclusive of any and all questions of liability and left open for consideration only the question whether there had been a recurrence or increase of disability since the time of the payment for such services.

The statute now provides that the payment for medical and hospital services is not an admission of liability to pay compensation and not a payment for compensation." (Emphasis added.) *Anker v. Illinois*, 11 Ill. Ct. Cl. 32, 36 (1935).

Accordingly, when the legislature stated that providing medical services under section 8(a) is not the payment of compensation, it specifically meant that such provision is not a factor in determining the limitations period for filing a workers' compensation claim. This was a logical way to articulate the matter, since the limitations period begins running from "the last payment of compensation." 820 ILCS 305/6(d) (West 2002).

This construction of the statute is apparent in several Illinois court decisions. See *Chicago Board of Underwriters v. Industrial Comm'n*, 332 Ill. 611, 615 (1928) (claim deemed untimely even though employer made payments for hospital and medical services less than six months before claim was filed, and limitations statute allowed filing of claim "within six months after the date of the last payment of

compensation"); *Lewis v. Industrial Comm'n*, 357 Ill. 309, 312 (1934) (noting—in a limitations context—that furnishing medical, surgical, and hospital services is not payment of compensation); *Anker*, 11 Ill. Ct. Cl. 32 (payment for medical services was not payment of compensation for purposes of determining whether claim was timely filed); *Lee v. Illinois*, 12 Ill. Ct. Cl. 218, 220 (1942) ("[s]ince the amendment of 1925, the furnishing of medical, surgical and hospital services does not extend the time for filing application for compensation"); *Ahlers*, 54 Ill. App. 3d at 645 ("the last sentence of section 8(a) *** relates to the duration of the limitation period for filing an application for adjustment of a compensation claim"); see also *Madsen v. Industrial Comm'n*, 383 Ill. 590, 595 (1943) (the 1925 amendment encourages employers to promptly make medical payments by protecting them against prior liability consequences of such payments).

The appellate court has further concluded that the last sentence of section 8(a) does not have bearing outside the limitations context. For example, in *Ahlers* the employer invoked that sentence against a circuit court judgment enforcing a Commission decision requiring monthly payments for nursing care. The judgment was issued under section 19(g) of the Act, which authorized the circuit court to enforce Commission decisions involving "payment of compensation." *Ahlers*, 54 Ill. App. 3d at 641. Since the last sentence of section 8(a) provides that medical payments are not compensation, the employer argued that section 19(g) did not authorize the circuit court to enforce the particular order at issue. The appellate court disagreed, noting that the final sentences of section 8(a) have a singular legislative purpose different from the one asserted by the employer. After discussing the supreme court's decision in *Madsen*, 383 Ill. 590, the appellate court declared:

> "[W]e adhere to the construction of the last sentence of section 8(a) that the provision relates to the duration of the limitation period for filing an application for adjustment of a compensation claim. [Citation.] Our examination of the Act and relevant decisions convinces us that *no additional legislative intent exists* that an employee lose section 19(g) protection when an employer has defaulted in furnishing the services required by section 8(a)." (Emphasis added.) *Ahlers*, 54 Ill. App. 3d at 645-46.

See also *Vulcan Materials Co. v. Industrial Comm'n*, 362 Ill. App. 3d 1147 (2005) (concluding that the last sentence of section 8(a) does not foreclose interest on a medical expenses award under section 19(n), even though section 19(n) only applies to awards involving "compensation"). But see *Legris v. Industrial Comm'n*, 323 Ill. App. 3d 789, 792 (2001) (concluding that payment of medical expenses is payment of

compensation for purposes of determining the limitations period, although stating, "this court need not decide what the last paragraph of section 8(a) means").

In the instant case, petitioner invokes the last sentence of section 8(a) to argue that payment of prosthetic expenses is not payment of compensation for purposes of determining respondent's lien under section 5(b). As illustrated above, the disputed statutory language has a singular purpose inapplicable under the instant circumstances. Outside the limitations context, that language does not warrant loss of privileges prescribed in the Act. See *Ahlers*, 54 Ill. App. 3d 638. Accordingly, outside the limitations context, payment of section 8(a) expenses does indeed qualify as payment of compensation. For example, if an employer unreasonably or vexatiously disobeyed a Commission order to pay prosthetic expenses, the aggrieved employee could seek penalties under section 19(k) of the Act (820 ILCS 305/ 19(k) (West 2002))—a provision linking penalties to delayed or underpaid "compensation." Likewise, amounts of prosthetic payments are included in an employer's lien under section 5(b), a provision that also hinges on payment of compensation.

This limitations-based construction of the last sentence of section 8(a) has been in place for a very long time without corrective action by the legislature. Where a statute is not amended after judicial construction, it is presumed that the legislature has acquiesced in the court's statement of legislative intent. *R.D. Masonry, Inc. v. Industrial Comm'n*, 215 Ill. 2d 397 (2005). Accordingly, petitioner's claim must fail.

## CONCLUSION

For the foregoing reasons, we reverse the circuit court's judgment and reinstate the Commission's decision.

Circuit court judgment reversed; Commission decision reinstated.

McCULLOUGH, P.J., and HOFFMAN, CALLUM, and GOLDEN-HERSH, JJ., concur.